**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Douglas Paul MATTES,**
**Defendant-Appellant.**

**No. 81–2998.**

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1982.

Decided Aug. 30, 1982.

Marc L. Polland, Polland & Assoc., Milwaukee, Wis., for defendant-appellant.

William E. Callahan, Asst. U. S. Atty., Milwaukee, Wis., for plaintiff-appellee.

Before PELL, Circuit Judge, GIBSON,* Senior Circuit Judge, and ESCHBACH, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Douglas Paul Mattes appeals his conviction for possession of a firearm by a felon. 18 U.S.C. app. § 1202(a)(1) (1976). He asserts that the firearm should not have been admitted into evidence because it was obtained by means of an illegal search. Mattes makes two arguments in support of his position: (1) the City of Milwaukee police officer who searched Mattes had no official authority in the city where the search was conducted, the City of South Milwaukee, and (2) even if the officer had authority, he was not justified in searching Mattes.

I.

In the early morning hours of November 29, 1980, Milwaukee police officer Eugene Grabowski responded to a complaint at a Milwaukee tavern. The tavern owner told Grabowski that there had been a fight between two customers resulting in glass being thrown and shots being fired into the jukebox and ceiling. The owner recognized one of the suspects as a member of the "Milwaukee Outlaws Motorcycle Club" (Outlaws), who was later identified as Edward Anastas. The owner could not identify the other suspect but described him as a 6'3", 225 pound, 25 to 27 year old white male with shoulder-length blond hair.

Later that day Grabowski was contacted by Sergeant Eric Slamka of the South Milwaukee Police Department. Slamka said that Anastas was in another bar, this one in South Milwaukee, along with several other members of the Outlaws. Grabowski and other Milwaukee police officers met with Slamka several blocks from the South Milwaukee bar to discuss plans for entering it to arrest Anastas. The group of officers entered the bar through its only two doors, some of them carrying shotguns. Mattes was one of five patrons in the bar, and he was wearing a cap with an Outlaws emblem. Grabowski saw Mattes stand up, look away from Grabowski, and move his hand to the area near his waist. Grabowski ordered all the patrons to put their hands on the bar and they complied. All the patrons, including Mattes, were frisked. Grabowski said that he frisked Mattes because he fit the description of the unidentified suspect. Mattes testified that he is 6'5" tall and weighs 320 pounds. Grabowski found a loaded .38 caliber pistol in Mattes's pocket. The district court found that the police entry into the bar took place about twenty-three hours after the incident in the first bar.

Mattes was indicted on January 27, 1981. On April 3, 1981, an evidentiary hearing was held before a magistrate on Mattes's motion to suppress physical evidence obtained as a result of the search in the bar. The magistrate, after finding the facts as described above, held that the search of Mattes was not justified because Mattes's hand gesture could not have given Grabowski reasonable grounds to fear for his safety, particularly in light of the number of officers at the scene. The district court declined to follow the magistrate's recommendation to grant Mattes's motion to suppress, saying that Mattes's semblance to the other suspect and his hand gesture gave Grabowski reason to fear for his safety; the police's advantage in numbers meant little when one bullet could end a life. The district court adopted the magistrate's recommendation in all other respects. The district court did not take issue with the facts as found by the magistrate. Rather it disagreed with the magistrate's conclusion that under those facts Grabowski did not have reason to fear for his safety. The district court also rejected Mattes's argument that Grabowski lacked authority in South Milwaukee.

Mattes was tried before a jury and was convicted on October 14, 1981. The district court imposed a sentence of one year and one day in prison.

* Hon. Floyd R. Gibson, Senior Circuit Judge,     Eighth Circuit, sitting by designation.

**1041**

## II.

Mattes's first argument is that Officer Grabowski, of the Milwaukee Police Department, lacked authority to make an arrest in South Milwaukee. His argument is based on the general rule in Wisconsin that police officers have no authority outside of the political subdivision in which they are officers. *See* Wis.Stat.Ann. § 66.32 (West 1965). However, there is an exception to this general rule when there is a request for assistance: "Upon the request of any law enforcement agency, ... the law enforcement personnel of any other law enforcement agency may assist the requesting agency within the latter's jurisdiction, notwithstanding any other jurisdictional provision." Wis.Stat.Ann. § 66.305(1) (West Supp. 1981–1982).

■ The exception applies in the instant case. A representative of the South Milwaukee police, Sergeant Slamka, met with the Milwaukee officers in South Milwaukee, helped plan the strategy for entering the bar, and accompanied the Milwaukee officers into the bar. Even if Sergeant Slamka did not expressly ask for assistance, his involvement was certainly an implicit request for assistance.[1]

## III.

Mattes's other argument is that Grabowski was not justified in frisking him. There is no question that a frisk implicates the Fourth Amendment. *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–1878, 20 L.Ed.2d 889 (1968). The Supreme Court has stated that a frisk can be justified even if an officer lacks probable cause to arrest

if "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.* at 27, 88 S.Ct. at 1883. The Court made clear that a mere "hunch" was not sufficient justification for a frisk. *Id.* Rather, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. *Id.* at 21, 88 S.Ct. at 1879.

■ We agree with the district court that Grabowski was able to point to specific facts to warrant a belief that his own safety or that of others was in danger. When he entered the bar, he saw Mattes stand up, turn away, and move his hand toward his waist, movements consistent with reaching for a gun. He noticed that Mattes resembled the suspect who had been involved in a shooting within the last twenty-four hours. These facts justified Grabowski's search of Mattes.

Mattes argues that countervailing considerations made the search unjustified. First, he argues that he did not resemble the suspect from the earlier shooting because he was two inches taller and ninety-five pounds heavier than that suspect. He also points out that he and Anastas were at opposite ends of the bar, indicating he was not with Anastas. It is relevant that Grabowski had to make a quick judgment, *see Terry*, 392 U.S. at 28, 88 S.Ct. at 1883 that he could not know how accurate the bartender had been in describing the suspect, and that a difference of two inches or ninety-five pounds is not so great when dealing with a person of Mattes's size. Also,

1. The United States argues in the alternative that the City of Milwaukee Charter, which was approved by the State, gives the City of Milwaukee Police Department authority throughout the County of Milwaukee, which includes the City of South Milwaukee. Milwaukee, Wis., Charter, § 22.09(1) (1977). Mattes replies by citing the next subsection of the Charter which, he contends, gives the Milwaukee police authority throughout the county only if Milwaukee County grants such authority to the City of Milwaukee, and that no such authority has been granted. That part of the Charter reads:

In order to facilitate the transactions of business and performance of duty by policemen in the county of Milwaukee beyond the limits of the city of Milwaukee, the county board of supervisors of the county of Milwaukee may supply the police department of the city of Milwaukee with sufficient authority and conveyance to travel through the county of Milwaukee.

*Id.* at § 22.09(2). Because of our conclusion that there was a request for assistance, we need not decide whether Mattes's interpretation of the Charter is correct.

Mattes's being at the opposite end of the bar from Anastas would not show that Mattes was not involved in the other incident, particularly when there were only five patrons in the bar. Grabowski's belief that Mattes resembled the suspect was reasonable.

Second, Mattes argues that there was nothing suspicious about his movements. However, we think that Grabowski's concern about a person turning away and moving a hand toward the waist upon entry by the police was reasonable, especially when coupled with Mattes's semblance to the suspect.

Third, Mattes argues that once the patrons put their hands on the bar, the police no longer had reason to fear for their safety. However, the patrons were not going to be in that position indefinitely. Eventually the police would allow the patrons who were not arrested to resume their activities. Therefore the concern of Grabowski was not alleviated by the patrons putting their hands on the bar.

Fourth, Mattes argues that the fact that there were more police than patrons would allay any fear the police had for their safety. We agree with the district court that an advantage in numbers does not mean very much when one bullet can end an officer's life.

Mattes's last argument is that the search of all the patrons shows that the reasons Grabowski offered for searching Mattes were pretextual and therefore this case is on point with *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979). In *Ybarra*, police obtained a warrant to search a tavern and its bartender for heroin. When they entered the bar, they announced that they were going to search everyone in it for weapons. During the course of this search the police found heroin in Ybarra's pocket. The Supreme Court held that the search of Ybarra contravened the Fourth and Fourteenth Amendments. *Id.* at 96, 100 S.Ct. at 344.

*Ybarra* is distinguishable from the instant case. The Court in *Ybarra* held that the search was not permissible under *Terry* because the search was not supported by a reasonable belief that Ybarra was armed and dangerous. The police did not recognize Ybarra, he gave no indication of possessing a weapon, and he made no gestures indicative of an intent to commit an assault. The state was unable to articulate any specific fact that would have justified even a suspicion that Ybarra was armed and dangerous. *Id.* at 93, 100 S.Ct. at 343. In Mattes's case, Grabowski believed Mattes looked like a suspect involved in a shooting that occurred less than twenty-four hours earlier and Mattes made gestures which could lead an officer to believe Mattes was reaching for a gun. Therefore this case is outside the scope of *Ybarra*.

■ Mattes suggests that the search of all the patrons shows that Grabowski lied when he said that he searched Mattes because of his semblance to the suspect and because of his gestures; the reasons were simply a pretext for an illegal search. Mattes is, in effect, asking us to assess the credibility of witnesses. However, assessment of the credibility of witnesses on a motion to suppress evidence is a question of fact and we will not overturn the district court's conclusion unless it is clearly erroneous. *United States v. Davis*, 514 F.2d 1085, 1088 (7th Cir. 1975); *United States v. Conner*, 478 F.2d 1320 (7th Cir. 1973). The magistrate assessed the credibility of the witnesses at the suppression hearing and his findings of fact showed he believed Grabowski. The district court adopted the magistrate's findings in this regard. Although the magistrate could consider the search of all the patrons in assessing the credibility of Grabowski, and the district court could consider this fact in its de novo determination of credibility, *see United States v. Raddatz*, 447 U.S. 667, 673, 680, 100 S.Ct. 2406, 2411, 2414, 65 L.Ed.2d 424 (1980), we cannot say that the search of all the patrons makes the district court's conclusion as to credibility clearly erroneous.

■ Finally even if the police searched the other patrons without justification, it would not affect the outcome of this case.

The justification for searching Mattes exists independent of police actions toward other patrons. There is nothing in the record to show whether the police were justified in searching the other patrons, nor should there be. Mattes does not have standing to complain about alleged illegal searches of the other patrons. "The established principle is that suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself ...." *Alderman v. United States,* 394 U.S. 165, 171–72, 89 S.Ct. 961, 965, 22 L.Ed.2d 176 (1969).

The judgment of the district court is affirmed.