COUNTY OF DANE, Plaintiff-Respondent,

v.

Christopher J. CAMPSHURE, Defendant-Appellant.†

Court of Appeals

*No. 96–0474. Submitted on briefs July 12, 1996.—Decided July 25, 1996.*

(Also reported in 552 N.W.2d 876.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *Tracey A. Wood* of *Kalal & Associates* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Lyn C. Opelt*, assistant district attorney.

Before Eich, C.J., Dykman and Vergeront, JJ.

VERGERONT, J.[1] Christopher Campshure appeals from a judgment of conviction for operating a motor vehicle while intoxicated in violation of § 69.01 DANE COUNTY ORDINANCES, which incorporates § 346.63(1)(a), STATS. He contends that, in view of *State v. Babbitt*, 188 Wis. 2d 349, 525 N.W.2d 102 (Ct. App. 1994), the law enforcement officer's request to perform field sobriety tests converted the traffic stop into an arrest, and that the arrest was illegal because it was not supported by probable cause. As a result, Campshure claims, all evidence obtained as a consequence of the illegal arrest should have been suppressed by the trial court. We conclude that a request to perform field sobriety tests does not convert an otherwise lawful investigatory stop into an arrest. We therefore affirm the judgment of conviction.

The pertinent facts are not disputed. Early one morning, Dane County Deputy Sheriff Dale Veto observed Campshure's vehicle stopped at the stop lights at the corner of Century Avenue and U.S. Highway 12 in the City of Middleton. The vehicle remained

---

[1] The chief judge of the court of appeals converted this from an appeal decided by one-judge to a three-judge panel by order dated July 8, 1996. *See* RULE 809.41(3), STATS.

stopped while the light turned green, then back to red. When Veto pulled up next to Campshure, Veto observed him sleeping in the driver's seat. The vehicle was parked partially in the roadway. Campshure told Veto that he was waiting for the light to turn green. When Veto told him the light had already changed from red to green and back to red, Campshure said he must have fallen asleep. Veto noticed a strong odor of intoxicants coming from Campshure and saw that his eyes were very bloodshot. When getting out of the vehicle, Campshure had to place his right hand on the top of the door to keep his balance. His speech was slow and slurred. He told Veto that he had been to various bars and had had three or four beers.

Veto asked Campshure to perform three field sobriety tests—the heel-to-toe test, the finger-to-nose test, and the alphabet test. After demonstrating each test to Campshure, Veto instructed him to begin the tests. Campshure was unable to perform the three tests as demonstrated by Veto. Veto asked if Campshure would submit to a preliminary breath test and Campshure said he would. The test result was .11. Veto then informed Campshure that he was under arrest, handcuffed him and took him in the squad car to the Middleton Police Department.

The trial court denied Campshure's motion to suppress evidence, concluding that the officer's request that Campshure perform field sobriety tests was not an arrest, which would require probable cause, but was within the permissible scope of an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968).

On appeal, Campshure implicitly concedes that his initial detention was a lawful investigatory stop. He contends, however, that the scope of a lawful investigatory stop was exceeded by the officer's request that he

perform field sobriety tests. Campshure acknowledges that in *State v. Swanson*, 164 Wis. 2d 437, 448, 475 N.W.2d 148, 153 (1991), the supreme court held that a person is not under arrest for Fourth Amendment purposes when he or she is asked to perform field sobriety tests because a reasonable person would not believe that he or she is under arrest merely because he or she has been asked to perform such tests during a routine traffic stop. But, according to Campshure, *Babbitt* requires a different result than that reached in *Swanson*.

In *Babbitt*, we held that a driver's refusal to perform a field sobriety test when requested by an officer is not protected by the Fifth Amendment privilege against self-incrimination and, therefore, the driver's refusal may be used to establish probable cause to arrest for driving while intoxicated. *Babbitt*, 188 Wis. 2d at 362, 525 N.W.2d at 106. Campshure argues that requiring a suspect to choose between performing the test or having the refusal considered as a factor for probable cause to arrest imposes, in effect, an obligation on the suspect to cooperate in the investigation. According to Campshure, this exceeds an officer's authority under *Terry* and converts an otherwise lawful investigative stop into an arrest.

We reject Campshure's argument. Campshure mixes Fourth Amendment analysis with Fifth Amendment analysis in a manner supported by neither logic nor case law. When a claim is made that a search or seizure violates the Fourth Amendment, the first inquiry is whether a search or seizure has occurred. It has long been settled that stopping an automobile and detaining its occupants is a "seizure" under the Fourth Amendment. *Berkemer v. McCarty*, 468 U.S. 420, 436-

31

37 (1984). The next inquiry under the Fourth Amendment is whether the seizure was reasonable. While an officer must have probable cause to believe a crime has been committed in order to make an arrest, an officer may detain a person on less than probable cause in certain circumstances. When an officer's observations lead him or her to reasonably suspect that a person has committed, is committing, or is about to commit a crime, the officer may detain that person briefly to investigate the circumstances that provoke the suspicion. *Berkemer*, 468 U.S. at 439. An investigatory stop is permissible when the person's conduct may constitute only a civil forfeiture. *State v. Krier*, 165 Wis. 2d 673, 678, 478 N.W.2d 63, 65-66 (Ct. App. 1991). The reasonableness inquiry required by the Fourth Amendment in this context has two parts: whether the officer's action was justified at the inception of the detention and reasonably related in scope to the circumstances that justified the interference in the first place. *Terry*, 392 U.S. at 19-20.

Veto had a reasonable suspicion that Campshure had been driving while intoxicated based on his observation of Campshure asleep in his stopped vehicle after the light had changed to green and back to red, the odor of alcohol emanating from him, and his bloodshot eyes. Veto was therefore justified in detaining Campshure briefly to investigate further. The answers to Veto's questions and Veto's related observations provided information that made it reasonable to investigate further by requesting that Campshure perform field sobriety tests. This request was reasonably related in scope to the circumstances that justified the initial stop. Indeed, *Swanson* holds that a request that a person perform field sobriety tests does not transform an otherwise lawful investigative stop into an arrest.

*Swanson*, 164 Wis. 2d at 448, 475 N.W.2d at 153. The *Swanson* court reasoned that, under ordinary circumstances, the clear implication of such a request is that if one passes the test, one is free to leave. *Id.*

Our decision in *Babbitt* does not require a different result or alter the proper Fourth Amendment analysis. In *Babbitt*, we addressed a Fifth Amendment claim. The defendant contended that considering a person's refusal to perform a field sobriety test as a factor in determining probable cause to arrest compels a person to testify against himself or herself. Under Fifth Amendment analysis, the first inquiry was whether a field sobriety test is testimonial in nature. We held it is not. *Babbitt*, 188 Wis. 2d at 361, 525 N.W.2d at 106. Therefore, we concluded, a person does not have a Fifth Amendment right to refuse to take a field sobriety test and the refusal can be used as a factor for probable cause. *Id.* at 362, 525 N.W.2d at 106. We contrasted this to testimonial statements from a suspect, which cannot be compelled in a lawful investigatory stop. *Id.* at 360, 525 N.W.2d at 106. Although an officer may detain a person upon reasonable suspicion to investigate, the person detained has a constitutional right not to respond to questions. *Id.*

We also held in *Babbitt* that because the State provides a defendant with the option of performing or refusing to perform the field sobriety test, there is no compulsion in violation of the Fifth Amendment.[2] *Id.* at 361, 525 N.W.2d at 106.

[2] In reaching this conclusion, we relied on *South Dakota v. Neville*, 459 U.S. 553 (1983), which held that admission into evidence of a refusal to submit to a blood test did not offend the Fifth Amendment right against self-incrimination. The court in *Neville* did not rest its decision on the ground that refusal to submit to a blood test was not testimonial in nature, but on the

Campshure attempts to convert the lack of Fifth Amendment protection for field sobriety tests into increased Fourth Amendment protection where field sobriety tests are concerned. According to Campshure, because field sobriety tests are not protected by the Fifth Amendment, an officer needs to have probable cause before requesting that a suspect perform field sobriety tests. Campshure argues that since testimonial statements of a suspect are protected by the Fifth Amendment, an officer need only have reasonable suspicion to ask appropriate investigatory questions. We can perceive no logic in this result. Certainly *Babbitt* does not support this result. Indeed, our discussion in *Babbitt* implies just the opposite. We would not have undertaken a discussion whether the refusal to take a field sobriety test could be used as a factor in determining probable cause to arrest if probable cause was necessary before such a request could be made.

The lack of Fifth Amendment protection for field sobriety tests in *Babbitt* does not affect the *Swanson* court's reason for concluding that a request to perform field sobriety tests does not convert a lawful investigatory stop into an arrest. It remains true that the clear

alternative ground that the Fifth Amendment is limited to prohibiting physical or moral compulsion on the person asserting the privilege. *Id.* at 562. The *Neville* Court noted that the State of South Dakota did not directly compel submission to the blood test because the person had a choice whether to submit or refuse, with the refusal being used as evidence against the person. The Court also considered the safe and painless nature of the blood test and the fact that the State *wants* the person to take the test. The Court concluded that a refusal to submit to the test, after being lawfully requested to take it, is not an act coerced by the officer and is thus not protected by the privilege against self-incrimination. *Neville*, 459 U.S. at 563-64.

implication of such a request is that if one passes the test, one is free to leave. *See Swanson*, 164 Wis. 2d at 448, 475 N.W.2d at 153.

In support of his position, Campshure cites to this language in a concurring opinion in *Terry*:

> However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation.

*Terry*, 392 U.S. at 34 (White, J., concurring).

Based on this language, Campshure argues that *Terry* holds that "compelling" a detained person to take field sobriety tests (by using refusal as one factor in determining probable cause) is beyond the lawful scope of an investigatory stop. There is no merit to this argument. First, the language is from a concurring opinion. Second, it is addressing answers to questions, which, unlike field sobriety tests, are protected by the Fifth Amendment. *Babbitt*, 188 Wis. 2d at 360, 525 N.W.2d at 106. Third, *Babbitt* does not hold that refusal to take field sobriety tests, in itself, constitutes probable cause to arrest. Fourth, Campshure's contention that he is "compelled" to take field sobriety tests because a refusal can be used as a factor in determining probable cause, has no merit in light of our conclusion in *Babbitt* that there is no compulsion in violation of the Fifth Amendment because the suspect is not required to perform field sobriety tests. *Babbitt*, 188 Wis. 2d at 361-62, 525 N.W.2d at 106. Campshure provides no authority

for the proposition that a lawful request by an officer, which is not considered compulsion for Fifth Amendment purposes, transforms a lawful investigatory stop into an arrest.

*By the Court.*—Judgment affirmed.