STATE of Wisconsin, Plaintiff-Respondent,

v.

Leslie M. HAYNES, Defendant-Appellant.†

Court of Appeals

*No. 00–3083–CR. Submitted on briefs August 24, 2001.— Decided October 3, 2001.*

2001 WI App 266

(Also reported in 638 N.W.2d 82.)

724

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gerard F. Kuchler* of *Kuchler Law Offices* of Waukesha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Kathleen M. Ptacek*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Nettesheim, P.J., Anderson and Snyder, JJ.

¶ 1. SNYDER, J.    Leslie M. Haynes appeals from judgments of conviction for resisting an officer, contrary to Wis. Stat. § 946.41(1) (1999–2000)[1] and battery to an officer, contrary to Wis. Stat. § 940.20(2). Haynes argues that the arresting officer from Waukesha county was not acting in his official capacity or with lawful authority as a police officer when he asked her to perform field sobriety tests, arrested her and transported her to a hospital for blood tests because the

---

[1] All statutory references are to the 1999–2000 version unless otherwise noted.

detention and arrest took place in Milwaukee county. We disagree and affirm the judgments of conviction.

## FACTS[2]

¶ 2. The facts are undisputed. On January 17, 1999, at approximately 12:11 a.m., Village of Butler Police Officer Phillip Grabski, while working in the Village of Butler in Waukesha county, saw a car traveling eastbound on Silver Spring Drive go through a red stoplight without slowing or stopping at the intersection of Silver Spring Drive and North 124th Street, the Milwaukee/Waukesha county line. Grabski called the Milwaukee County Sheriff's Department for assistance and followed the vehicle into Milwaukee county and eventually stopped the car on Highway 45, north of Capitol Drive, about two miles from the alleged traffic violation. Grabski made contact with Haynes, the driver, after approaching the vehicle to issue a traffic citation. Grabski noticed that Haynes gave off a strong odor of intoxicants, displayed bloodshot and glassy eyes, and slurred her speech. After questioning by Grabski, Haynes confirmed that she had been drinking that evening. Haynes submitted to field sobriety tests, after which she was arrested for operating a motor vehicle while intoxicated.

¶ 3. Grabski took Haynes to the Village of Butler Police Department in Waukesha county because

---

[2] Haynes has not provided in her appellate briefs citations to the record to corroborate the facts set out in her briefs. An appellate court is improperly burdened where briefs fail to properly and accurately cite to the record. *Meyer v. Fronimades*, 2 Wis. 2d 89, 93–94, 86 N.W.2d 25 (1957). We therefore hold Haynes to those facts in her briefs and she will not be heard on reconsideration to challenge facts that this court properly gleaned from her briefs without citation to the record.

Haynes asked for a rest room. Grabski radioed ahead and asked that a female officer from the Village of Menomonee Falls meet them in Butler and assist him. While en route to the Butler police department, Haynes yelled vulgarities and kicked the cage of the squad car. At the police department, Haynes was resistive and combative while Grabski and Village of Menomonee Falls Police Officer Jackie Infalt attempted to direct Haynes to the bathroom. Haynes attempted to "get past" both officers and repeatedly stated that she would not cooperate. Haynes was eventually transported, kicking and cursing, to Waukesha Memorial Hospital; at the hospital, Haynes opened the door to the squad car so that it struck Infalt. Haynes continually refused to cooperate and was extremely combative; during a struggle, she bit Infalt's arm through three layers of clothing and broke the skin.

¶ 4. Haynes was charged with and convicted of resisting an officer for her behavior while at the Butler police department and with battery to an officer for biting Infalt.

## DISCUSSION

¶ 5. Haynes argues that Grabski was not acting in his official capacity or with lawful authority as a police officer when he arrested her in Milwaukee county and transported her to Waukesha county for blood tests. It appears that Haynes makes two arguments: that Grabski was not acting within his official capacity at the time of her arrest, and that Grabski and Infalt were not acting within their lawful authority at the time they transported her to the hospital. Both arguments are equally without merit.

¶ 6. WISCONSIN STAT. § 62.09(13) authorizes police officers to arrest, with or without process, every person within the city engaged in any disturbance of the peace or violating any law of the state or ordinance of such city. *City of Brookfield v. Collar*, 148 Wis. 2d 839, 841, 436 N.W.2d 911 (Ct. App. 1989). However, peace officers are allowed to arrest outside their jurisdiction under certain circumstances. *Id.* at 842. WISCONSIN STAT. § 175.40 addresses arrests and states, in relevant part:

> **(2)** For purposes of civil and criminal liability, any peace officer may, *when in fresh pursuit*, follow anywhere in the state and arrest any person for the violation of any law or ordinance the officer is authorized to enforce. (Emphasis added.)

Prior to *Collar*, Wisconsin courts had not developed specific standards defining "fresh pursuit." *Collar*, 148 Wis. 2d at 842. However, in *Collar*, we adopted the three criteria set forth in *Charnes v. Arnold*, 600 P.2d 64 (Colo. 1979), commonly utilized in determining fresh pursuit. *Collar*, 148 Wis. 2d at 842–43. First, the officer must act without unnecessary delay. *Id.* at 842. Second, the pursuit must be continuous and uninterrupted, but there need not be continuous surveillance of the suspect. *Id.* at 842–43. Finally, the relationship in time between the commission of the offense, the commencement of the pursuit and the apprehension of the suspect is important; the greater the length of time, the less likely it is that the circumstances under which the police act are sufficiently exigent to justify an extrajurisdictional arrest. *Id.* at 843.

¶ 7. Here, there does not appear to be any delay between the traffic violation and the officer's decision to

act. Grabski testified that after witnessing the violation, he immediately activated his emergency lights and siren. Grabski's pursuit of Haynes was continuous and uninterrupted. In addition, the period of time between the violation, the start of the pursuit and Haynes's apprehension was very short, spanning only a few miles, and any minimal delay was caused by Haynes's refusal to pull over. We conclude that Grabski was in fresh pursuit of Haynes and that the extrajurisdictional stop was proper.

¶ 8. Haynes conspicuously fails to address the fresh pursuit doctrine, thereby conceding that Grabski was, in fact, in fresh pursuit of her and the stop was justified. Haynes seems to be arguing that after issuing her the traffic citation, Grabski was required to ignore the powerful and obvious signs of her intoxication and had no authority to further investigate or detain her because he was outside of Waukesha county. We disagree with this contention.

■

¶ 9. There is no question that a police officer may stop a vehicle when he or she reasonably believes that the driver is violating a traffic law, and once stopped, the driver may be asked questions reasonably related to the nature of the stop. *State v. Betow*, 226 Wis. 2d 90, 93, 593 N.W.2d 499 (Ct. App. 1999). Such a stop and detention is constitutionally permissible if the officer has an "articulable suspicion that the person has committed or is about to commit an offense." *Id.*

■

¶ 10. Once a justifiable stop is made, the scope of the officer's inquiry or the line of questioning may be broadened beyond the purpose for which the person was stopped only if additional suspicious factors come to the officer's attention. *Id.* at 94. In other words, if

731

during a valid traffic stop the officer becomes aware of additional suspicious factors which are sufficient to give rise to an articulable suspicion that the person has committed or is committing an offense or offenses separate and distinct from the acts that prompted the officer's intervention in the first place, the stop may be extended and a new investigation begun. *Id.* The validity of the extension is tested in the same manner and under the same criteria as the initial stop. *Id.* at 94–95.

¶ 11. Here, as we have noted above, the initial stop was justified under the fresh pursuit doctrine as provided in WIS. STAT. § 175.40 and *Collar.* Thus, if during this valid stop, Grabski became aware of additional factors that were sufficient to give rise to a suspicion that Haynes had committed or was committing an offense separate and distinct from the traffic violation, Grabski's stop of Haynes could lawfully be extended and a new investigation begun.

██

¶ 12. After Grabski stopped the car and made contact with Haynes, he noticed that she gave off a strong odor of intoxicants. She displayed bloodshot and glassy eyes and slurred her speech. Haynes admitted that she had been at a Christmas party and had been drinking that evening. Without question, these are additional suspicious factors sufficient to give rise to a suspicion that Haynes had committed the offense of drunk driving, an offense separate and distinct from the traffic violation. Thus, Grabski's stop of Haynes could be extended, commencing a new investigation of the new offense of drunk driving and justifying a brief detention of Haynes for further investigation. Tools for conducting such a new investigation include field sobriety tests. *See County of Jefferson v. Renz*, 231 Wis. 2d

293, 310, 603 N.W.2d 541 (1999); *see also County of Dane v. Campshure*, 204 Wis. 2d 27, 32, 552 N.W.2d 876 (Ct. App. 1996).

██

¶ 13.  In addition, Infalt's assistance in transporting Haynes to the hospital was lawful and appropriate. Generally, Wisconsin police officers have no authority outside of the political subdivision in which they are officers. *United States v. Mattes*, 687 F.2d 1039, 1041 (7th Cir. 1982). However, there is an exception to this general rule. *Id*. WISCONSIN STAT. § 66.0313[3] states, in relevant part:

> **(2)** Upon the request of any law enforcement agency . . . law enforcement personnel of any other law enforcement agency may assist the requesting agency within the latter's jurisdiction, notwithstanding any other jurisdictional provision. For purposes of ss. 895.35 and 895.46, law enforcement personnel, while acting in response to a request for assistance, shall be deemed employees of the requesting agency.

Grabski called and requested assistance from a Village of Menomonee Falls female officer. Infalt responded to that request and met Grabski and Haynes at the Village of Butler Police Department in Waukesha county, consistent with the provisions of § 66.0313.

## CONCLUSION

¶ 14.  Grabski was in fresh pursuit of Haynes when he crossed the Waukesha/Milwaukee county line and stopped her for a traffic violation. Thus, the stop in

---

[3] WISCONSIN STAT. § 66.0313 was previously WIS. STAT. § 66.305 (1997–98) but was renumbered and amended by 1999 Wis. Act 150, §§ 362 and 363. The amendments to the statute are immaterial to the issue before us.

Milwaukee county was proper pursuit to W<small>IS</small>. S<small>TAT</small>. § 175.40 and *Collar*. Furthermore, the strong odor of intoxicants, Haynes's bloodshot and glassy eyes and slurred speech, combined with her admission of drinking, were additional suspicious factors sufficient to give rise to a suspicion that she had committed the offense of drunk driving. Consequently, Grabski's continued detention and investigation of Haynes, which included field sobriety tests, was justified. Finally, officer Infalt's assistance to Grabski was appropriate pursuant to W<small>IS</small>. S<small>TAT</small>. § 66.0313. The judgments of conviction are affirmed.

*By the Court.*—Judgments affirmed.