MILWAUKEE COUNTY, Plaintiff-Cross-Respondent,

v.

JUNEAU COUNTY, Defendant,

SAUK COUNTY, Defendant-Cross-Respondent,

WISCONSIN COUNTY MUTUAL INSURANCE CORPORATION, Third-Party Plaintiff,

JUNEAU COUNTY, Third-Party Plaintiff-Appellant,

v.

SENTRY INSURANCE COMPANY, Third-Party Defendant-Cross-Respondent,

SAFETY NATIONAL CASUALTY CORPORATION, Third-Party Defendant-Respondent-Cross-Appellant.†

Court of Appeals

*No. 02–2880. Submitted on briefs August 13, 2003.— Decided January 22, 2004.*

2004 WI App 23

(Also reported in 676 N.W.2d 513.)

---

† Petition to review filed.

On behalf of the third-party plaintiff-appellant Juneau County, the cause was submitted on the briefs of *Mark B. Hazelbaker*, Madison.

On behalf of the third-party defendant-respondent-cross-appellant Safety National Casualty Corporation,

the cause was submitted on the briefs of *Virginia L. Newcomb* and *Patryk Silver* of *Borgelt, Powell, Peterson & Frauen, S.C.*, Madison.

On behalf of the defendant-cross-respondent Sauk County and the third-party defendant-cross-respondent Sentry Insurance Company, the cause was submitted on the brief of *Robert Horowitz* of *Stafford Rosenbaum LLP*, Madison, and *Bradway A. Liddle, Jr.* and *Sarah A. Zylstra* of *Boardman Law Firm LLP*, Madison. The brief was joined in by plaintiff-cross-respondent Milwaukee County.

Before Dykman, Anderson and Lundsten, JJ.

¶ 1. LUNDSTEN, J. This is a worker's compensation claim case arising out of a fatal helicopter crash in Dodge County that took the lives of two Milwaukee County police officers. Juneau County appeals that part of a summary judgment order which dismissed Juneau County's claim against its worker's compensation insurance carrier, Safety National Casualty Corporation. Safety National cross-appeals a subsequent summary judgment order that dismissed all claims against Sauk County and required Juneau County to reimburse Milwaukee County for worker's compensation payments made by Milwaukee County. We conclude that the circuit court properly dismissed Sauk County from the suit and properly entered judgment in favor of Milwaukee County against Juneau County. However, we also conclude that the court erred when it dismissed Juneau County's claim against Safety National. Accordingly, we affirm in part, reverse in part, and remand with directions that the circuit court enter judgment consistent with this opinion.

736

## BACKGROUND

¶ 2. The relevant facts are undisputed. Law enforcement officers pursued a murder suspect from Sauk County into Juneau County. Juneau County officers established a command post to coordinate search efforts by law enforcement personnel from multiple jurisdictions, including Sauk and Juneau Counties. At the request of a Juneau County officer, the Sauk County Sheriff used his agency to contact Milwaukee County officials and request the use of a helicopter to assist in the search. A helicopter, manned by two Milwaukee County deputy sheriffs, was sent to Juneau County and participated in the search. On its return trip to Milwaukee County, the helicopter crashed in Dodge County, killing both deputies aboard.

¶ 3. Milwaukee County made worker's compensation payments to the families of the deceased officers and then sought reimbursement from Sauk and Juneau Counties. The circuit court concluded that Juneau County, not Sauk County, was required to reimburse Milwaukee County. The circuit court also concluded that Juneau County's worker's compensation insurance policy with Safety National did not provide coverage.

## STANDARD OF REVIEW

¶ 4. This court reviews summary judgment decisions *de novo,* applying the same methodology employed by the circuit court. *Brownelli v. McCaughtry,* 182 Wis. 2d 367, 372, 514 N.W.2d 48 (Ct. App. 1994). That methodology is well established and need not be repeated here. *See, e.g., Lambrecht v. Estate of Kaczmarczyk,* 2001 WI 25, ¶¶ 20–24, 241 Wis. 2d 804, 623 N.W.2d 751.

## DISCUSSION

*Statutory Liability for
Worker's Compensation Payments*

¶ 5. We first address Safety National's cross-appeal in which it challenges the summary judgment order dismissing all claims against Sauk County and requiring Juneau County to reimburse Milwaukee County for worker's compensation payments made by Milwaukee County. We agree with Juneau and Sauk Counties that it is Juneau County which bears responsibility for the reimbursement payments.

¶ 6. WISCONSIN STAT. § 66.0513 (2001–02)[1] sets forth a worker's compensation scheme for law enforcement personnel who are called upon to perform duties outside of the territorial limits of the municipality where they are regularly employed. It provides:

> **(1)** Any chief of police, sheriff, deputy sheriff, county traffic officer or other peace officer of any city, county, village or town, who is required by command of the governor, sheriff or other superior authority to maintain the peace, or who responds to the request of the authorities of another municipality, to perform police or peace duties outside territorial limits of the city, county, village or town where the officer is employed, is entitled to the same wage, salary, pension, worker's compensation, and all other service rights for this service as for service rendered within the limits of the city, county, village or town where regularly employed.
>
> **(2)** All wage and disability payments, pension and worker's compensation claims, damage to equipment

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

and clothing, and medical expense arising under sub. (1), shall be paid by the city, county, village or town regularly employing the officer. Upon making the payment the city, county, village or town shall be reimbursed by the state, county or other political subdivision whose officer or agent commanded the services out of which the payments arose.

The parties agree that Milwaukee County was initially required to make worker's compensation payments to the families of the deceased deputy sheriffs. However, Safety National contends that its insured, Juneau County, had no obligation to reimburse Milwaukee County under § 66.0513(2) for two reasons: first, an officer from Sauk County, rather than Juneau County, requested assistance from Milwaukee County; and, second, the services of the Milwaukee County officers were requested, not "commanded" within the meaning of the statute. We reject both of Safety National's arguments.

¶ 7. Appellate review of statutory interpretation is *de novo*. We apply the following principles:

The purpose of statutory interpretation is to discern the intent of the legislature. To determine this intent, we look first to the plain language of the statute. If the language of the statute clearly and unambiguously sets forth the legislative intent, it is our duty to apply that intent to the case at hand and not look beyond the statutory language to ascertain its meaning.

If the language of the statute is ambiguous and does not clearly set forth the legislative intent, the court will resort to judicial construction. We ascertain legislative intent through judicial construction in relation to a number of extrinsic factors, including the legislative object intended to be accomplished, and the

statute's scope, history, context, and subject matter. A statute is ambiguous if it is capable of being understood by a reasonably well-informed person in either of two senses. Depending on the facts of a case, the same statute may be ambiguous in one setting and unambiguous in another.

In addition, although "it is true that statutory interpretation begins with the language of the statute, it is also well established that courts must not look at a single, isolated sentence or portion of a sentence, but at the role of the relevant language in the entire statute." Moreover, in interpreting a statute, courts must attempt to give effect to every word of a statute, so as not to render any portion of the statute superfluous.

*Landis v. Physicians Ins. Co. of Wis.*, 2001 WI 86, ¶¶ 14–16, 245 Wis. 2d 1, 628 N.W.2d 893 (citations omitted).

¶ 8. First, we agree with the circuit court that the undisputed facts establish that it was Juneau County, rather than Sauk County, that requested the services of the Milwaukee County officers. Although it was the Sauk County Sheriff who made contact with Milwaukee County, the sheriff was acting at the request of a Juneau County officer in charge of the command center in Juneau County. It is true that the Sauk County Sheriff suggested that Milwaukee County be contacted, but he nonetheless contacted Milwaukee County at the request of the Juneau County officer. The fact that Sauk County identified itself as the requesting agency on paperwork is immaterial because, in making our legal determination, we independently review the circumstances surrounding the request for assistance.

¶ 9. Accordingly, we conclude that the circuit court properly dismissed Sauk County from the case. If

any county "commanded" the services at issue here within the meaning of Wis. Stat. § 66.0513(2), it was Juneau County. We turn our attention to the meaning of the term "commanded."

¶ 10. Safety National's "commanded" argument is straightforward. The insurance company contends that the reimbursement provision in Wis. Stat. § 66.0513(2) only applies when officers from the requesting city, county, village, or town "commanded"—that is compelled—the police services of the assisting city, county, village, or town. Safety National asserts that § 66.0513 distinguishes between compulsory police services required by command and voluntary police services rendered in response to a request. Safety National contends that Juneau County is not entitled to reimbursement under § 66.0513(2) because Juneau County "never *ordered* that a Milwaukee County helicopter be provided." We disagree with this analysis.

¶ 11. When viewed in isolation, the term "commanded" in Wis. Stat. § 66.0513(2) is ambiguous. "Commanded" has multiple meanings in common usage. The transitive verb "command" is variously defined as "to direct authoritatively," "to have at one's immediate bidding or disposal," "to cause or direct to come or go," and "to order or request to be given." Webster's Third New International Dictionary 455 (unabridged ed. 1993). Thus, the phrase "commanded the services," as used in the statute, could commonly be understood to refer to services that are ordered authoritatively, or that are requested by or performed under the direction of officers of another political subdivision.

¶ 12. Safety National advances a meaning of "commanded" that is divorced from context and that would produce absurd results. Is an officer "commanded" when a sheriff from one county requests

741

assistance and a sheriff from another county dispatches officers to serve the requesting sheriff? Does it matter if the sending sheriff expressly orders his or her officers to go and directs them to follow the orders of the requesting sheriff while in the requesting sheriff's county? Does it matter whether the requesting sheriff puts his or her statements to the assisting officers in the form of requests or orders? We think not.[2] In any event, the legislature could not have intended that liability for worker's compensation claims and other benefits under Wis. Stat. § 66.0513 would depend on subtle distinctions between how requests and directives are uttered. We can conceive of no reason why such distinctions would matter for purposes of worker's compensation liability.

¶ 13. Our conclusion is buttressed by the legislature's use of the word "command" in subsection (1) of Wis. Stat. § 66.0513. The use of the phrase "required by command" in subsection (1) plainly does not mean that officers who volunteer to go to another city, county, village, or town are excluded from worker's compensation and other benefits. For example, if the Milwaukee County Sheriff had requested volunteers to go to Juneau County, and the deceased officers had been volunteers, their families would not be denied worker's compensation benefits under subsection (1) because the

---

[2] For that matter, we question whether a requesting sheriff has the authority to order assisting deputies from a different county to do any act. The parties have not shed light on this topic, and we need not resolve it. We only observe that law enforcement personnel from one jurisdiction "may assist" another law enforcement agency at that agency's request. *State v. Haynes*, 2001 WI App 266, ¶ 13, 248 Wis. 2d 724, 638 N.W.2d 82. A separate question is whether such officers *must* comply with directives from the sheriff of the requesting county.

officers were not "required by command of the . . . sheriff . . . to perform police or peace duties outside territorial limits of the . . . county." Such a reading of "command" would be absurd.

¶ 14. We conclude that the most reasonable interpretation of "commanded" in WIS. STAT. § 66.0513(2) is that it encompasses "ordered," "directed," and "requested." It follows that Juneau County is required to reimburse Milwaukee County.

*Policy Coverage*

¶ 15. We turn next to the question whether Juneau County's liability falls within the scope of its worker's compensation policy. The applicable standard of review and legal principals are as follows:

> Insurance contract interpretation presents a question of law that is reviewed de novo. The same rules of construction that govern general contracts are applied to the language in insurance policies. An insurance policy is construed to give effect to the intent of the parties as expressed in the language of the policy.
>
> Therefore, the first issue in construing an insurance policy is to determine whether an ambiguity exists regarding the disputed coverage issue. Insurance policy language is ambiguous "if it is susceptible to more than one reasonable interpretation." If there is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law. If there is an ambiguous clause in an insurance policy, we will construe that clause in favor of the insured.

*Folkman v. Quamme*, 2003 WI 116, ¶¶ 12–13, 264 Wis. 2d 617, 665 N.W.2d 857 (citations omitted).

¶ 16. We do not find any ambiguity in the insurance policy language at issue here. The Safety National policy provides, in relevant part:

**A. Coverage of Agreement**

This Agreement applies only to Loss sustained by the EMPLOYER because of liability imposed . . . by the Workers' Compensation or Employers' Liability Laws of . . . [Wisconsin] . . . on account of bodily injury by accident . . . to Employees of the EMPLOYER engaged in the business operations specified in the Declarations . . . includ[ing] resulting death.

. . . .

In no event shall [Safety National] be liable for any Loss voluntarily assumed by the EMPLOYER under any contract or agreement, expressed or implied.

. . . .

**D. Definitions**

(1) "Loss" — shall mean actual payments legally made by the EMPLOYER . . . in satisfaction of: (a) statutory benefits, (b) settlements of suits and claims, and (c) awards and judgments . . . .

. . . .

(3) "Exclusions from Loss" — . . .
. . . .
(g) Injury sustained by any Employee in, upon, entering, or alighting from any EMPLOYER owned, leased, or regularly chartered aircraft unless coverage is intended by inclusion in Item 6 of the Declarations or by endorsement to this

Agreement. Coverage will extend to aircraft purchased, leased, or regularly chartered only if the EMPLOYER notifies [Safety National] within thirty (30) days from the date of the initial exposure. In the event of such notification, however, [Safety National] may modify coverage and/or charge additional premiums.

. . . .

(6) "Employee" — as respects liability imposed upon the EMPLOYER by the Workers' Compensation Law of [Wisconsin], . . . shall mean any person performing work which renders the EMPLOYER liable under the Workers' Compensation Law . . . .

. . . .

**L. Good Faith Claims Administration**

The EMPLOYER shall use diligence, prudence, and good faith in the investigation, defense, and settlement of all such claims and shall not unreasonably refuse to settle any claim which, in the exercise of sound judgment with respect to the entire claim, should be settled, provided, however, that the EMPLOYER shall not make any payment or agree to any settlement for any sum which would involve the limits of the CORPORATION's liability hereunder without the approval of the CORPORATION. The EMPLOYER's failure to exercise diligence, prudence, and good faith may result in the disclaimer of coverage for the particular claim.

Juneau County is designated as the "employer" on the "Declarations" page. Under this language, Safety National must provide coverage because Juneau County has sustained a "loss" imposed by the worker's compen-

sation laws of Wisconsin with respect to "employees." We reject Safety National's several arguments to the contrary.

¶ 17. First, relying on subsection A of the policy, Safety National asserts there is no coverage because the deputies that were killed were not "[e]mployees of the EMPLOYER," Juneau County. Rather, Safety National cites a variety of legal authorities as part of an attempt to establish that, at all times, the Milwaukee County deputies remained employees of Milwaukee County under state law.[3] However, we need not decide whether, under state law, the Milwaukee County deputies were temporarily Juneau County employees when rendering assistance under the mutual aid statutes because we conclude Safety National's policy requires coverage regardless of the deputies' employment status under state law. Safety National's policy defines "employee" as "any person performing work which renders the EMPLOYER liable under the Workers' Compensation Law." Accordingly, the question is not whether the Milwaukee County deputies were employees of Juneau County under state law, but whether Juneau County is

---

[3] WISCONSIN STAT. § 66.0313 reads:

**66.0313 Law enforcement; mutual assistance. (1)** In this section, "law enforcement agency" has the meaning given in s. 165.83(1)(b).

(2) Upon the request of any law enforcement agency, including county law enforcement agencies as provided in s. 59.28(2), the law enforcement personnel of any other law enforcement agency may assist the requesting agency within the latter's jurisdiction, notwithstanding any other jurisdictional provision. For purposes of ss. 895.35 and 895.46, law enforcement personnel, while acting in response to a request for assistance, shall be deemed employees of the requesting agency.

(3) The provisions of s. 66.0513 apply to this section.

liable under Wisconsin worker's compensation law. Addressing this question, Safety National contends that the mutual aid reimbursement statute, WIS. STAT. § 66.0513, is not a worker's compensation law. However, as we explained above, Juneau County was required, under § 66.0513(2), to reimburse Milwaukee County for the worker's compensation payments. Thus, Juneau County was, in the words of the policy, "liable under the Workers' Compensation Law."

¶ 18. The fact that the worker's compensation reimbursement provision at issue here is located in the "mutual aid" statute hardly means it is not part of Wisconsin's worker's compensation law. To the contrary, the provision plainly assigns responsibility for certain worker's compensation payments. Moreover, we agree with Juneau County that if WIS. STAT. § 66.0513 is not a "worker's compensation law" within the meaning of the policy, then Safety National would never be liable for a worker's compensation payment imposed by the statute on an employer—a result that is patently nonsensical and contrary to the statutory scheme.

¶ 19. Next, Safety National contends that use of the helicopter fell within the policy's aircraft exclusion, subsection D(3)(g) of the policy. However, the aircraft exclusion provision is inapplicable because Juneau County did not "own[ ], lease[ ], or regularly charter[ ]" the helicopter flown by the deputies. Rather, Milwaukee County loaned Juneau County the use of the aircraft on a one-time emergency basis—a situation not specified in the aircraft exclusion.

¶ 20. Safety National further asserts there is no coverage because its policy does not cover losses "voluntarily assumed by the EMPLOYER." Safety National

747

contends that Juneau County voluntarily assumed the loss by requesting mutual aid. We disagree. If "voluntarily assumed" had this meaning, Juneau County would voluntarily assume a loss every time it sent even its own officers out to work and injury or death resulted. When officers of a county perform their law enforcement duties, including seeking assistance from other police agencies when the need arises, they are not voluntarily assuming losses in any meaningful sense. Juneau County's responsibility for the worker's compensation payments was a matter of statutory obligation, not a voluntarily assumed liability.

¶ 21. Safety National next asserts that Juneau County forfeited coverage by accepting liability without Safety National's approval and by otherwise failing to engage in good faith claims administration. Safety National relies on policy language providing that it may disclaim coverage if Juneau County fails to exercise diligence, prudence, and good faith in the claim settlement process. There is, however, no exercise of bad faith in Juneau County's acknowledgment of its statutory obligation to reimburse Milwaukee County for the worker's compensation payments.

¶ 22. Finally, Safety National asserts there is no coverage because Juneau County did not pay a premium to cover employees from other counties rendering law enforcement services to Juneau County. Safety National argues that it did not intend to insure multiple jurisdictions against losses for which no premium was paid. This argument adds nothing to the arguments that have come before. We have explained why Juneau County is liable to Milwaukee County and why Safety National's policy provides coverage.

## CONCLUSION

¶ 23. Accordingly, the portion of the summary judgment which dismissed Safety National is reversed, and the matter is remanded to allow the circuit court to enter summary judgment in Juneau County's favor on the policy coverage issue. Safety National shall be taxed with the costs of both the appeal and cross-appeal, pursuant to WIS. STAT. RULE 809.25(1). We do not, however, deem the cross-appeal frivolous and, therefore, deny Sauk County's motion for attorney fees and other costs under RULE 809.25(3).

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded with directions.