# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 1, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1243-CR**

Cir. Ct. No. **2019CT44**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JENNIFER A. JENKINS,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Outagamie County: MITCHELL J. METROPULOS, Judge. *Affirmed*.

¶1 HRUZ, J.[1] Jennifer Jenkins appeals a judgment convicting her of operating a motor vehicle while intoxicated ("OWI"), as a second offense. Jenkins argues the circuit court erred by denying her motion to suppress evidence, which

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

was premised on two bases: (1) the arresting officer unlawfully stopped her vehicle outside of the officer's jurisdiction; and (2) the blood draw performed on her was unreasonable under the circumstances. We reject Jenkins' arguments and affirm.

## BACKGROUND

¶2 According to the criminal complaint, around midnight on October 12, 2018, Officer Adam Miller, a patrol officer with the Grand Chute Police Department, stopped Jenkins' vehicle in the City of Appleton after he had observed, among other things, her vehicle cross the centerline of Wisconsin Avenue in the neighboring Town of Grand Chute. After completing field sobriety tests and submitting to a preliminary breath test, Jenkins was arrested, and she consented to a blood draw. A blood sample was obtained and indicated a "[blood] alcohol concentration of .178 g/100 mL." The State charged Jenkins with one count of second-offense OWI and one count of second-offense operating with prohibited alcohol concentration.

¶3 Jenkins moved to suppress evidence obtained from the traffic stop and from the blood draw. She argued that Officer Miller was not in "fresh pursuit" of her vehicle at the time of the traffic stop, rendering the stop unlawful because Miller did not have authority to stop Jenkins outside of Grand Chute. Jenkins also asserted that the blood draw was unreasonable under the circumstances. Specifically, Jenkins alleged:

> During the blood draw, the phlebotomist encountered difficulties in harvesting a blood specimen from Ms. Jenkins' body. Such difficulties were not [t]he product of fault or contribution by Ms. Jenkins but rather were seemingly the product of her natural bodily structure (i.e., challenges in finding a vein with adequate blood supply). Ultimately, Ms. Jenkins was subject to a needle being

2

> inserted into her body at three (3) different locations and the process was unusually long in duration. The overall blood draw caused more pain and discomfort as to Ms. Jenkins than the ordinary person subject to a blood draw. A sample of her blood, albeit below the standard amount in volume required by the Laboratory of Hygiene, was collected. Officer Miller was present for and witnessed the blood draw procedure.

¶4     The circuit court held an evidentiary hearing on Jenkins' motion. Officer Miller testified that he first observed Jenkins' vehicle while it was traveling eastbound on Wisconsin Avenue. He thought her vehicle appeared to be traveling "a little bit fast," but he was unable to confirm its speed. Miller testified that he began following Jenkins' vehicle and observed both of her vehicle's driver's side tires cross "the centerline at Wisconsin [Avenue] and Popp [Lane]," with "at least a third of the vehicle" entering the oncoming lane of traffic. Miller stated that he continued following Jenkins' vehicle and observed its driver struggle to "maintain[] a straight line in its lane of traffic," despite staying within its lane. He further recalled, however, that about one-third of Jenkins' vehicle again crossed the centerline "[a]t the intersection of Badger [Avenue] and Wisconsin [Avenue]." Miller testified that he then activated his vehicle's emergency lights, and that Jenkins eventually pulled over her vehicle.

¶5     Officer Miller also testified that once Jenkins was arrested, he took her to ThedaCare Regional Medical Center in Appleton for a blood test. Miller recalled that "Jenkins was not necessarily cooperative with [the phlebotomist]" while the phlebotomist attempted to collect a blood sample from Jenkins. When asked if he could be more specific, Miller testified that Jenkins was not following the phlebotomist's directions. However, he could not specifically recall what directions Jenkins had failed to follow. Miller also could not recall how long it took the phlebotomist to obtain the blood sample from Jenkins.

¶6    On cross-examination, Officer Miller testified that Popp Lane was approximately one mile away from the border of Grand Chute and Appleton. Miller stated that he decided to stop Jenkins when her vehicle crossed the centerline for the first time, but he did not do so immediately because "[he] was obtaining evidence." He also testified that Jenkins had entered Appleton before her vehicle crossed the centerline for the second time, and he estimated that he followed Jenkins' vehicle for approximately one mile before activating his vehicle's emergency lights. Jenkins' counsel did not ask Miller any questions regarding the blood draw, and Jenkins did not call any witnesses on her behalf at the hearing.

¶7    Following the hearing, Jenkins submitted a brief that included a "screenshot" that she had obtained from Google Maps depicting where Wisconsin Avenue crosses Popp Lane. Based on that screenshot, Jenkins asserted that there is "a raised concrete center median between the opposing lanes of travel" on Wisconsin Avenue.[2] Jenkins argued that "[b]ased on this physical feature, it would be impossible for about one-third of [her vehicle] to cross the centerline into the opposing lane," and that Officer Miller's testimony was therefore "incredible as a matter of law."

¶8    Jenkins also filed a supplemental brief regarding a video recording obtained from a camera in Officer Miller's police vehicle. Jenkins asserted that the video showed her vehicle had crossed the centerline roughly two and one-half blocks past the intersection of Wisconsin Avenue and Badger Avenue, and that

---

[2] To put the "concrete center median" into perspective, the median appears to be about the height of a typical curb and less than the width of a traffic lane.

only the width of her tires crossed the centerline. Jenkins further asserted that the video demonstrated that Miller activated his vehicle's emergency lights at the intersection of Wisconsin Avenue and Mason Street—approximately one-half mile past the Grand Chute border in Appleton.

¶9 The circuit court viewed the video at a later hearing and then denied Jenkins' motion to suppress in an oral ruling. The court found that the video "appears to be consistent with the testimony of Officer Miller." The court also found that the pursuit lasted approximately two minutes "on the video," and the court recognized that Miller did not utilize "any type of unnecessary … or prolonged surveillance into the other jurisdiction." The court further found that "[t]he original violation was observed by the officer in Grand Chute," which occurred before the camera had started recording. The court concluded that Miller "exercised reasonable discretion by continuing to follow the subject vehicle into the City of Appleton."

¶10 In regard to the blood draw, the circuit court noted that neither the defendant nor the phlebotomist had testified. The court recounted Officer Miller's testimony that "there was a blood draw, and [that] there may have been some issues to obtain the blood by the phlebotomist, but she was able to [obtain the blood sample]." The court further noted that it could not "speculate as to what the defendant would have testified to, or even the phlebotomist, so I just have to rely on what the testimony was by Officer Miller with regards to that issue." The court concluded there was "no evidence to indicate that there was any type of abuse or a violation of [Jenkins'] Fourth Amendment rights with regards to the administration of that blood test …."

¶11 Jenkins subsequently pled no contest to second-offense OWI, and the remaining count was dismissed outright. The circuit court sentenced Jenkins to forty days' jail time, of which thirty days were stayed pending completion of an OWI treatment program. Jenkins now appeals.[3]

## DISCUSSION

¶12 On appeal, Jenkins renews her suppression arguments regarding the traffic stop and the subsequent blood draw. In evaluating a circuit court's decision on a motion to suppress, we uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Dobbs*, 2020 WI 64, ¶28, 392 Wis. 2d 505, 945 N.W.2d 609. We then independently apply applicable constitutional principles to those facts. *Id.*

*I. Traffic stop*

¶13 Before addressing Jenkins' main legal arguments, we first address her challenge to a key factual finding. Jenkins argues that part of Officer Miller's testimony was "incredible as a matter of law" because it was impossible for her vehicle to have crossed the centerline at Wisconsin Avenue and Popp Lane due to a "concrete median" that separated the opposing traffic lanes on Wisconsin Avenue. She contends that we should take judicial notice of the concrete median depicted in her Google Maps screenshot and conclude that "the circuit court's factual finding that Ms. Jenkins' [vehicle] crossed the centerline at the intersection of Wisconsin Avenue and Popp [Lane] is clearly erroneous."

---

[3] An order denying a motion to suppress evidence may be reviewed on appeal notwithstanding the defendant's guilty or no-contest plea. WIS. STAT. § 971.31(10).

6

¶14    The State identifies several concerns regarding the reliability of the screenshot obtained from Google Maps, including questions regarding when the image was recorded and whether the image accurately depicts the intersection as it was in October 2018. Ultimately, we need not decide whether judicial notice is appropriate here because even if we did take judicial notice of the concrete median, we would nonetheless conclude that the circuit court's finding that Jenkins had committed a traffic violation in Grand Chute was not clearly erroneous.[4]

¶15    Contrary to Jenkins' arguments, the circuit court did not specifically find that Jenkins' vehicle crossed the centerline precisely *at* the intersection of Wisconsin Avenue and Popp Lane. Rather, the court found that Officer Miller observed "[t]he original violation … *in Grand Chute*." (Emphasis added.) The court's finding of a traffic violation—i.e., Jenkins' vehicle crossing the centerline of Wisconsin Avenue—therefore encompasses more area than just at the intersection of Wisconsin Avenue and Popp Lane. This breadth of the court's finding is significant in the context of Miller's testimony and the role of the purported concrete median.

¶16    For testimony to be incredible as a matter of law, it must be inherently or patently incredible; that is, "in conflict with the uniform course of nature or with fully established or conceded facts." *See State v. Vollbrecht*, 2012 WI App 90, ¶28 n.18, 344 Wis. 2d 69, 820 N.W.2d 443 (citation omitted).

---

[4] We do note, however, that relying on "general distances" obtained from Google Maps, which Jenkins correctly notes that this court had done in the past, *see State v. Smith*, No. 2016AP2453-CR, unpublished slip op. ¶3 n.1 (WI App Feb. 13, 2018), is qualitatively different from relying on street-level images from Google Maps.

Officer Miller testified that Jenkins' vehicle crossed the centerline "at Wisconsin and Popp." On cross-examination, Miller was asked how long it took him from the time he first began following Jenkins "to observe *around* Wisconsin Avenue and Popp [Lane] that … [Jenkins] crossed the centerline?" (Emphasis added.) Miller testified, "It's about a half a block."

¶17 Officer Miller was never asked any follow-up or clarifying questions regarding the precise location of that incident, or whether it occurred directly in the intersection of Wisconsin Avenue and Popp Lane. Nor was he confronted with the image of the concrete median upon which Jenkins now relies. Although one could rely on Miller's limited testimony to find that he had observed Jenkins' vehicle cross the centerline at the intersection of Wisconsin Avenue and Popp Lane, one could also reasonably infer that Miller provided an approximate location of where Jenkins' vehicle crossed the centerline.

¶18 With that in mind, the existence of a concrete median at the intersection of Wisconsin Avenue and Popp Lane does not render it impossible for Jenkins' vehicle to have crossed the centerline of Wisconsin Avenue somewhere near Popp Lane. Significantly, the "Street View" on Google Maps—of which Jenkins requested that this court take judicial notice—shows that the concrete median only continued approximately 200 feet on Wisconsin Avenue past its intersection with Popp Lane. Moreover, the median stopped well before the next cross street of Elberg Avenue, which is over one-tenth of a mile east of where the concrete median ended. Based on these facts, it would not have been impossible or implausible for Jenkins' vehicle to cross the centerline of Wisconsin Avenue soon after the concrete median ended. Nor would it have been unreasonable to describe such incident as having occurred "at" Wisconsin Avenue and Popp Lane. Officer Miller's testimony was therefore not in conflict with the uniform course of

8

nature or with fully established or conceded facts, and it was not incredible as a matter of law. *See Vollbrecht*, 344 Wis. 2d 69, ¶28 n.18. Accordingly, the circuit court's finding of a traffic violation in Grand Chute was not clearly erroneous. *See* WIS. STAT. § 346.05(1); *see also State v. Popke*, 2009 WI 37, ¶¶13-17, 317 Wis. 2d 118, 765 N.W.2d 569.

¶19    Moving on to Jenkins' legal challenges, Jenkins argues that Officer Miller did not comply with WIS. STAT. § 175.40(2) when he stopped her vehicle. Section 175.40(2) provides that "[f]or purposes of civil and criminal liability, any peace officer may, when in fresh pursuit, follow anywhere in the state and arrest any person for the violation of any law or ordinance the officer is authorized to enforce." Jenkins first contends that under § 175.40(2), an officer must have probable cause—as opposed to reasonable suspicion—before the officer may arrest a person outside of the officer's jurisdiction. Jenkins further argues that Miller did not have probable cause to believe that Jenkins had violated any law before stopping her vehicle.

¶20    Jenkins' argument that the officer lacked probable cause is premised entirely on her argument that Officer Miller's testimony regarding the traffic violation occurring in Grand Chute is incredible as a matter of law, and that the circuit court's finding regarding that testimony was clearly erroneous. She does not dispute, however, that Miller had probable cause to believe a traffic violation had occurred if we uphold the court's findings. Because the court found that Miller observed Jenkins commit a traffic violation when she allowed her vehicle to cross the centerline of Wisconsin Avenue in Grand Chute—and because that finding was not clearly erroneous—we conclude that Miller had probable cause to believe a traffic violation had occurred. *See* WIS. STAT. § 346.05(1); *Popke*, 317 Wis. 2d 118, ¶¶13-17. We therefore do not need to address Jenkins' argument that

WIS. STAT. § 175.40(2) requires that Miller have probable cause to arrest her outside of Grand Chute as opposed to reasonable suspicion to initiate a traffic stop, because Miller had probable cause here. *See* **Turner v. Taylor**, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (we need not address all issues raised by the parties if one is dispositive).

¶21 Jenkins next argues that Officer Miller "did not act in valid fresh pursuit" under WIS. STAT. § 175.40(2). For purposes of § 175.40(2), an officer is in "fresh pursuit" when: (1) the officer acted without unnecessary delay; (2) the pursuit was continuous and uninterrupted; and (3) a reasonably short period of time existed between the commission of the offense, the commencement of the pursuit, and the apprehension of the suspect. *See* **State v. Haynes**, 2001 WI App 266, ¶6, 248 Wis. 2d 724, 638 N.W.2d 82. Jenkins does not contest that Miller's pursuit of her vehicle was continuous and uninterrupted, but she argues that Miller's actions do not satisfy the remaining two criteria for fresh pursuit.

¶22 As to the first criterion for fresh pursuit, Jenkins argues that "[t]he record is devoid of any factors whatsoever to justify or excuse the delay undertaken by Officer Miller [in stopping her vehicle] or otherwise render the delay as necessary." We disagree. At most, Officer Miller followed Jenkins' vehicle for approximately 1.4 miles, including 0.4 miles in Appleton, after observing Jenkins' vehicle cross the centerline of Wisconsin Avenue for the first

time.[5] This minimal delay in stopping Jenkins, however, was not "unnecessary" when considered in light of Miller's explanation for the delay, which Jenkins ignores in her arguments. Miller testified that he did not immediately stop Jenkins because he "was obtaining evidence." That decision to collect additional evidence, for a short period of time, was reasonable under the facts known to Miller because he had observed Jenkins' vehicle travel "a little bit fast" and cross the centerline of Wisconsin Avenue. Under those circumstances, it would not be unreasonable for Miller to question whether Jenkins was impaired. Nor would it be "unnecessary" for Miller to follow Jenkins' vehicle to obtain additional evidence. In fact, such delay allowed Miller to further investigate Jenkins' driving behavior, to collect additional evidence of impaired driving—including observing Jenkins' vehicle weave in its lane and cross the centerline a second time—and to ultimately strengthen the subsequent prosecution of Jenkins. In short, Miller did not unnecessarily delay in stopping Jenkins.

¶23 Jenkins also argues, citing **Welsh v. Wisconsin**, 466 U.S. 740 (1984), that the third criterion for fresh pursuit requires that we consider the gravity of the offense in the context of the "temporal proximities" of the commission of the offense, the commencement of the pursuit, and the

---

[5] Jenkins asserts, based on the video from Officer Miller's police vehicle, that Miller followed her vehicle for 1.4 miles, including 0.4 miles into Appleton. As the State aptly observes, however, that video is not part of the appellate record. It was Jenkins' responsibility, as the appellant, to ensure completion of the appellate record. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. When an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the circuit court's ruling. *Id.* Without the video, we could reject Jenkins' assertion that Miller followed her vehicle a total of 1.4 miles because the only evidence in the record is Miller's testimony that he followed Jenkins' vehicle for approximately one mile. However, we will assume the truth of Jenkins' assertion because the additional 0.4 miles does not alter our ultimate conclusion.

apprehension of the suspect. Jenkins acknowledges that such temporal proximities were "not particularly long in duration," but she nevertheless argues that her crossing of the centerline on Wisconsin Avenue was a minor offense that did not justify an extra-jurisdictional stop.

¶24 Jenkins' reliance on *Welsh* is misplaced. The *Welsh* Court held, in the context of an exigent-circumstances analysis, that "an important factor to be considered when determining whether any exigency exists is the gravity of the underlying offense for which the arrest is being made." *Id.* at 753. The Court did not address the fresh pursuit doctrine or apply its holding to such cases. Moreover, Jenkins has not identified any legal authority that has considered the gravity of the offense in the context of fresh pursuit, and we therefore decline to do so here.

¶25 We agree with Jenkins' assessment that the relevant time period was "not particularly long in duration." In total, Officer Miller followed Jenkins' vehicle for approximately 1.4 miles before initiating the traffic stop. The time period was therefore reasonably short between Jenkins' vehicle crossing the centerline of Wisconsin Avenue in Grand Chute, Miller commencing his pursuit of Jenkins, and his stopping Jenkins's vehicle. *See Haynes*, 248 Wis. 2d 724, ¶7 (concluding that a short period of time existed between a violation and the apprehension of the defendant when police followed the defendant's vehicle for two miles).

¶26 In sum, Officer Miller was in "fresh pursuit" when he stopped Jenkins vehicle in Appleton. Miller therefore had authority under WIS. STAT. § 175.40(2) to stop and arrest Jenkins.

¶27 Although Officer Miller had authority under WIS. STAT. § 175.40(2) to stop and arrest Jenkins, we also address the State's alternative—and independent—argument regarding whether suppression would have been the proper remedy in this case. Suppression is required only when evidence is obtained in violation of a constitutional right or in violation of a statute providing suppression as a remedy. *State v. Keith*, 2003 WI App 47, ¶9, 260 Wis. 2d 592, 659 N.W.2d 403.

¶28 The State argues that suppression would not be the proper remedy because the traffic stop did not violate Jenkins' constitutional rights and because WIS. STAT. § 175.40(2) does not require suppression. In response, Jenkins contends that the State has forfeited this argument by failing to raise it in the circuit court. Alternatively, she summarily argues that there was a constitutional violation because an arrest is unreasonable when the officer does not have the statutory authority to make the arrest. She further contends, citing *Ross v. Neff*, 905 F.2d 1349 (10th Cir. 1990), that other courts have held "[a] warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause." *Id.* at 1354.

¶29 We reject Jenkins' arguments. First, "it is well-established law in Wisconsin that an appellate court may sustain a lower court's ruling 'on a theory or on reasoning not presented to the lower court.'" *See Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶27 n.4, 326 Wis. 2d 729, 786 N.W.2d 78 (citation omitted). As the respondent, the State may therefore argue for the first time on appeal that suppression is not the appropriate remedy. *See id.*

¶30 Second, beyond citing *Ross* and making a general statement that extra-jurisdictional arrests are unreasonable when the officer lacks statutory

authority to arrest, Jenkins does not further develop her argument that a constitutional violation has occurred here in the context of this basic, lawful traffic stop. In addition, *Ross* is not persuasive or instructive. The Tenth Circuit has recognized that *Ross* is limited to "the unique factual circumstances that spawned it: that is, a warrantless arrest by state police on federal tribal land." *United States v. Jones*, 701 F.3d 1300, 1312 (10th Cir. 2012). Moreover, the United States Supreme Court has concluded that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Virginia v. Moore*, 553 U.S. 164, 176 (2008). Therefore, even if Officer Miller lacked authority under WIS. STAT. § 175.40(2) to arrest Jenkins, Miller's lack of statutory authority does not render the traffic stop and subsequent arrest per se unreasonable under the Fourth Amendment to the United States Constitution or unreasonable under article I, section 11 of the Wisconsin Constitution.[6]

¶31     Finally, Jenkins does not in any substantive way refute the State's argument that WIS. STAT. § 175.40(2), on its own, does not provide suppression as a remedy, and she therefore concedes that issue. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments may be deemed conceded). We therefore conclude that even if Officer Miller lacked authority under WIS. STAT. § 175.40(2) to stop Jenkins' vehicle in Appleton, suppression would not be the appropriate remedy

---

[6] Although Jenkins also relies on article I, section 11 of the Wisconsin Constitution, she does not develop any argument that the Wisconsin Constitution provides broader protection in this case than the Fourth Amendment to the United States Constitution. We therefore treat both as providing the same protection for the purposes of this case.

here.[7]  In all, the circuit court did not err by denying Jenkins' motion to suppress evidence obtained from the traffic stop.

## II. Blood draw

¶32    Jenkins also argues that the State failed to meet its burden of proving that the blood draw was reasonable under the circumstances.  She contends that the State did not "materially controvert" the facts asserted in her motion to suppress.  She also argues that the circuit court improperly applied the burden of proof when it concluded that there was no evidence of abuse or of a violation of her constitutional rights.

¶33    We reject Jenkins' arguments.  "Although the State has the ultimate burden of proof on suppression issues, the defendant has the burden of production and must produce some evidence that makes a prima facie showing that the State violated one of his [or her] rights." *State v. Jackson*, 229 Wis. 2d 328, 336, 600 N.W.2d 39 (Ct. App. 1999); *see also* *State v. Noble*, 2002 WI 64, ¶19, 253 Wis. 2d 206, 646 N.W.2d 38.

¶34    Here, Jenkins did not testify, present any evidence, or cross-examine Officer Miller regarding the blood draw.  Miller's testimony is the only evidence in the record on this issue, and he testified that he took Jenkins to a hospital for a blood test; that a phlebotomist collected Jenkins' blood sample; that he could not

---

[7] We nonetheless note that in *State v. Caster*, No. 2015AP1965-CR, unpublished slip op. ¶31 (WI App Oct. 12, 2016), we concluded, under the facts of that case, that suppression was not the appropriate remedy for an extra-jurisdictional stop involving no constitutional violation, regardless of whether the officer was in fresh pursuit under WIS. STAT. § 175.40(2).

Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

recall how long it took the phlebotomist to collect the blood sample; that "Jenkins was not necessarily cooperative with [the phlebotomist]"; and that Jenkins failed to follow the phlebotomist's directions.

¶35    No court could conclude or infer from this evidence that the blood draw was unreasonable under the circumstances. Indeed, the record contains no evidence that the phlebotomist had to insert a needle into Jenkins' arm multiple times, that the blood draw took an inordinate amount of time, that Jenkins displayed or experienced any signs of pain or discomfort during the process, or that Jenkins experienced any adverse health effects. Blood draws are "commonplace in these days of periodic physical examination and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain." *State v. Kozel*, 2017 WI 3, ¶42, 373 Wis. 2d 1, 889 N.W.2d 423 (quoting *Schmerber v. California*, 384 U.S. 757, 771 (1966)).

¶36    Although Jenkins faults the State for not producing more evidence regarding the manner in which the blood draw was performed, she never made—or even attempted to make—a prima facie showing that the blood draw was unreasonable. Accordingly, the facts here lead to only one conclusion: the blood draw was reasonable under the circumstances. The circuit court therefore did not err by denying Jenkins' motion to suppress evidence obtained from the blood draw.

> *By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

16