**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2019AP248-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2017CM355

**IN COURT OF APPEALS**
**DISTRICT III**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

V.

MICHELLE A. GREENWOOD,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed*.

¶1      HRUZ, J.[1]   Michelle Greenwood appeals a judgment, entered upon her guilty plea, convicting her of operating a motor vehicle while intoxicated (OWI) with a minor in the vehicle.  Greenwood argues the circuit court erred by

---

[1]  This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18).  All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

denying her motion to suppress evidence from a traffic stop, contending the police officer discovered that evidence only after he unlawfully extended the stop. We affirm.

## BACKGROUND

¶2    Just before 11:00 p.m. on February 2, 2017, Greenwood was driving on an interstate highway with her then-fifteen-year-old son and her sister. Rothschild Police Department officer Mitchell Klieforth observed Greenwood's vehicle traveling at a speed of 81 miles per hour (mph) in a 70 mph zone. Klieforth then initiated a traffic stop.

¶3    When Klieforth made contact with Greenwood, he observed that her pupils were "blatantly" dilated and that her eyes were "glassy and bloodshot." Klieforth later testified that Greenwood's pupils were "extremely large" and "were [some] of the biggest I've seen on a traffic stop, which drew my attention to [them]."

¶4    Klieforth also observed Greenwood's pupils constricted slower than normal when he shined his flashlight on them. He testified that, based upon his training and experience, slow pupil constriction in response to light is consistent with a person being under the influence of marijuana. Additionally, Klieforth noticed that Greenwood's pupils "rebounded"—which he explained meant that they "g[o]t … bigger and smaller" when the light was shone on them. Klieforth testified this reaction was also indicative of marijuana use.

¶5    At this point in the traffic stop, Klieforth suspected Greenwood had been driving her vehicle while she was under the influence of a drug. He

suspected that the drug was marijuana based on the "reddening of her eyes and of the dilation of the pupils."

¶6      Klieforth returned to his vehicle and checked Greenwood's criminal and driving records. After doing so, he returned to Greenwood's vehicle and issued her a traffic citation for speeding. Klieforth then asked Greenwood to step out of her vehicle because he "didn't want to bring up anything to do with drugs" in front of her sister and, in particular, her juvenile son. In interviewing Greenwood outside of her vehicle, she confirmed that she had not been taking any medications, but she did admit to using marijuana three days prior. Greenwood also told Klieforth that she had used the bathroom before she had left home, contradicting her earlier statement that she had been speeding because she needed to use a bathroom.

¶7      After Greenwood performed field sobriety tests and a K-9 that had arrived on the scene alerted at her vehicle, Klieforth located in her vehicle smoking devices and a small plastic bag containing a green leafy substance later identified as marijuana. She was subsequently arrested and charged with first-offense OWI contrary to WIS. STAT. § 346.63(1)(a), with a minor in the vehicle; possession of tetrahydrocannabinols; and possession of drug paraphernalia.

¶8      Greenwood moved to suppress evidence on the basis that Klieforth lacked reasonable suspicion to extend the traffic stop after he had issued Greenwood the speeding ticket. At the motion hearing, Klieforth testified regarding his police training and experience on recognizing impaired driving due to drug use. He had twelve years' experience in law enforcement. Klieforth also took a drug enforcement class with an "agent through the Department of Justice,

Division of Narcotics Enforcement," and he attended drug identification training at Camp Douglas Volk Field. Klieforth further testified that, during his law enforcement career, he had been in contact with "well over 100 people who have been under the influence of drugs." Klieforth acknowledged, however, that he was not a DRE.

¶9 The circuit court denied Greenwood's motion to suppress, concluding Klieforth had "reasonable suspicion … once he gave her the ticket for speeding[] to continue the stop." Pursuant to a plea agreement, Greenwood then pleaded guilty to OWI with a minor in the vehicle, and the State moved to dismiss and read in the two remaining charges. Greenwood now appeals.[2]

## DISCUSSION

¶10 The United States and Wisconsin Constitutions both protect the rights of individuals to be free from unreasonable searches and seizures, and we normally interpret article I, section 11 of the Wisconsin Constitution coextensively with the Supreme Court's interpretation of the Fourth Amendment. *State v. Floyd*, 2017 WI 78, ¶19, 377 Wis. 2d 394, 898 N.W.2d 560. A traffic stop is a form of seizure entitled to Fourth Amendment protections. *Id.*, ¶20.

¶11 Reasonable suspicion that a driver is violating a traffic law is sufficient to initiate a traffic stop. *Id.* A traffic stop can become unlawful, however, if it lasts longer than is necessary to effectuate the purpose of the stop. *Id.*, ¶21. After a stop is made, an officer may expand the scope of inquiry only to

---

[2] A circuit court's order denying a motion to suppress evidence may be reviewed on appeal from a judgment of conviction notwithstanding a defendant's guilty plea. *See* WIS. STAT. § 971.31(10).

investigate "additional suspicious factors" that come to the officer's attention. *State v. Hogan*, 2015 WI 76, ¶35, 364 Wis. 2d 167, 868 N.W.2d 124. "An expansion in the scope of the inquiry, when accompanied by an extension of time longer than would have been needed for the original stop, must be supported by reasonable suspicion." *Id.*

¶12 Whether an extension of a traffic stop is supported by reasonable suspicion is a question of constitutional fact, *id.*, ¶32, and depends on the totality of the circumstances, *id.*, ¶36. We uphold the circuit court's findings of historical fact unless they are clearly erroneous. *Id.*, ¶32. We then independently apply constitutional principles to those facts. *Id.*

¶13 Greenwood concedes the initial traffic stop was lawful. She argues, however, that Klieforth unconstitutionally expanded the scope and duration of the stop. Greenwood contends Klieforth completed the purpose of the traffic stop when he issued the speeding citation, at which time he lacked reasonable suspicion to believe that she had been driving while under the influence of marijuana. Consequently, Greenwood maintains her continued seizure was unlawful. Given that Greenwood's contradictory statements to Klieforth regarding her bathroom use and her admission to using marijuana three days prior were made only after he had issued the citation, she maintains those statements should not be considered in assessing whether Klieforth had reasonable suspicion to conduct field sobriety tests, during which the K-9 unit arrived.

¶14 Although the parties dispute the precise moment at which Klieforth extended the traffic stop past its original purpose, we need not decide that issue. Even assuming Greenwood's foregoing contentions are correct, we conclude Klieforth had reasonable suspicion to believe Greenwood was driving under the

influence of marijuana before he issued the speeding citation. Thus, the extension of the stop was lawful.

¶15 To explain, the totality of the circumstances supports Klieforth's OWI investigation of Greenwood, permitting him to expand the scope of his inquiry and to extend the stop's length longer than would have been necessary to issue only a citation for speeding. As an initial matter, speeding is evidence of general impairment, and Greenwood was driving 11 mph over the speed limit. *See City of West Bend v. Wilkens*, 2005 WI App 36, ¶19, 278 Wis. 2d 643, 693 N.W.2d 324.

¶16 More importantly, Klieforth observed a number of physical factors indicating that Greenwood was under the influence specifically because of marijuana. Greenwood's eyes were "glassy and bloodshot," facts that Greenwood largely avoids discussing in her briefs. Further, Greenwood had "extremely large" pupils. Her pupils had also constricted slower than normal and displayed the "rebound effect" when exposed to direct light. Klieforth therefore observed "specific and articulable facts which, taken together with rational inferences from those facts," made his suspicion that Greenwood was driving under the influence of marijuana reasonable. *See State v. Post*, 2007 WI 60, ¶10, 301 Wis. 2d 1, 733 N.W.2d 634.

¶17 Greenwood argues that Klieforth's "observations about [her] eyes, without more, do not amount to reasonable suspicion that she was driving under the influence of marijuana." Yet, she never explains the reason for this conclusion. Rather, she only points to indicia of drug use that were absent. She then surmises that her eyes "may have been dilated because it was a dark winter

night" and that her bloodshot eyes may have been the result of "the end of a night of driving."

¶18 We reject Greenwood's arguments regarding Klieforth's lack of reasonable suspicion before she exited her vehicle. First, Klieforth had observed additional indicia of impairment than just his observations of her eyes—namely, her speeding. Moreover, Klieforth observed multiple signs of drug use from Greenwood's eyes. With respect to her pupils specifically, Klieforth noticed two different signs—first, the "extremely large" pupils, and, second, the slow manner in which the pupils "rebounded" after Klieforth shined light on them.

¶19 Second, Klieforth was not required to draw inferences that favored innocence in assessing Greenwood's behavior. *See Hogan*, 364 Wis. 2d 167, ¶¶35-36. It is well established that "a combination of behaviors—all of which may provide the possibility of innocent explanation—can give rise to reasonable suspicion." *Id.*, ¶36.

¶20 Additionally, Greenwood downplays the probative value of Klieforth's observations by attacking his training and experience. She acknowledges that an officer's training, experience and knowledge acquired while on the job are proper for courts to consider in assessing the propriety of an officer's actions. *See State v. Betow*, 226 Wis. 2d 90, 98, 593 N.W.2d 499 (Ct. App. 1999). Nevertheless, she contends we should give little weight to Klieforth's observations of her pupils merely because he is not a trained DRE and, according to her, he "did not have definitive information on how drug use may affect pupil size." *See Hogan*, 364 Wis. 2d 167, ¶48. Greenwood asserts that *Hogan* bolsters her arguments in this regard, and that it is factually similar to her case. We disagree.

7

¶21 ***Hogan*** was, according to our supreme court, a "fact-intensive case" in which the court did "not disturb the circuit court's conclusion" that an extension of a traffic stop for field sobriety tests was unlawful. *See id.*, ¶¶2, 53. The supreme court observed that the existence of reasonable suspicion was a "close question," but it ultimately upheld the circuit court's decision because "the State's failure to tie up loose ends in circuit court should not be rewarded just because the case is close." ***Id.***, ¶53.

¶22 One of those "loose ends" our supreme court identified involved the testimony of the sheriff's deputy who stopped the defendant. *See id.*, ¶¶43, 47-48. The deputy had twelve and one-half years' experience in law enforcement. ***Id.***, ¶47. He was not a DRE, and his testimony in the circuit court about restricted pupils was limited and "undermined his credibility," in the circuit court's estimation, for a variety of reasons. ***Id.***, ¶¶47-48. In particular, the deputy did not know "what methamphetamine [did] to pupils," and he admitted that pupils restrict when a person is outside on a sunny day, which was the case there. ***Id.***, ¶47. The supreme court observed that the circuit court put "no stock in the deputy's testimony about restricted pupils as a factor in establishing reasonable suspicion" because he "did not have definitive information *at any point* on how drug use might affect pupil size." ***Id.***, ¶48. Thus, our supreme court concluded that the "case for reasonable suspicion rest[ed] primarily on the deputy's observations that Hogan's upper body was shaking and 'he appeared to be very nervous.'" ***Id.***, ¶49. Under those circumstances, the court declined to reverse the circuit court's decision. ***Id.***, ¶53.

¶23 ***Hogan*** is an unsuitable comparison for at least two reasons. First, Klieforth observed materially more indicia of impairment due to drug use than did the deputy in ***Hogan***. Moreover, the links were stronger between Klieforth's

observations and Greenwood's suspected marijuana use than were the connections between the deputy's observations of Hogan and his suspected methamphetamine use. As the **Hogan** court observed, "The possibility that innocent explanations may exist for observed behavior does not preclude a finding of reasonable suspicion, but as a practical matter, police cannot expect to conduct field sobriety tests on every motorist who is shaking and nervous when stopped by an officer." *Id.*, ¶50. While shaking and nervousness are traits that can accompany a person's normal reaction to having been stopped by law enforcement (as opposed to being due to methamphetamine use), the same cannot be said here of Greenwood's glassy and bloodshot eyes, her "extremely large" pupils late at night, and her pupils' slow rebounding.

¶24 Second, although Klieforth and the deputy in **Hogan** each had similar years of experience and neither were DREs, Klieforth testified that he knew how marijuana use might affect pupil size. Klieforth also testified regarding the basis for his knowledge that Greenwood's dilated pupils indicated she was under the influence of marijuana—namely, he had received drug recognition training at Camp Douglas Volk Field, and he had taken a drug enforcement class with a Department of Justice agent.

¶25 Furthermore, Klieforth also testified he learned directly from a DRE that pupils of individuals under the influence of marijuana constrict slower than those of a sober individual and exhibit the "rebound effect," which Klieforth had observed of Greenwood before he issued her the speeding citation. Greenwood, notably, does not dispute that Klieforth observed these indicia of marijuana use. Accordingly, Klieforth provided the "definitive information" in his testimony that was missing in **Hogan**, wherein our supreme court observed that the omission of

9

such information greatly impacted the "close case" for reasonable suspicion of drug use.

By the Court.—Judgment affirmed.

This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.